
**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 11-50350 |
| Plaintiff - Appellee, | D.C. No. 2:11-cr-00094-ODW-1 |
| v. | |
| JOSE RODRIGUEZ ESPINOZA, Jr., AKA Junior, AKA Ribs, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Central District of California
Otis D. Wright, District Judge, Presiding

Argued and Submitted June 6, 2013
Pasadena, California

Before: TROTT, LUCERO[**], and W. FLETCHER, Circuit Judges.

Jose Rodriguez Espinoza, Jr., appeals his convictions of three counts of

distribution of methamphetamine and one count of possession of

methamphetamine on premises where minors reside with the intent to distribute.

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]     The Honorable Carlos F. Lucero, Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

He also appeals his 300-month sentence. We have jurisdiction over his timely appeal, and we affirm.

I

Espinoza's first and most serious claim is that the trial judge made a significant error in the presence of the jury, an error that amounted to a violation of due process. He asserts that the trial court's error deprived him of his right to a fair trial and thus requires that we grant him a new opportunity to contest his guilt. We agree that the trial court committed the error of which Espinoza complains, but conclude nevertheless that it was harmless beyond a reasonable doubt.

The error occurred during the defense's attempt on cross examination of a government witness to have that witness identify the area surrounding Espinoza's house as a "high crime area." The defense's contention was that a disputed bag of methamphetamine found in that area was not thrown there by the defendant -- as claimed by two FBI witnesses -- but probably dropped there by some other criminal.

In response to an objection by the prosecution, this is how the court's error occurred. We underline the trial court's mistake.

> DEFENSE COUNSEL: You have testified that you are an expert in the area of narcotic investigation and speaking with

|  |  |
|---|---|
|  | those involved. Do you know what a high crime area is? |
| PROSECUTOR: | Objection, your Honor. Relevance. |
| THE COURT: | Sustained. |
| DEFENSE COUNSEL: | May I make a proffer, your Honor? |
| THE COURT: | Quickly. |
| DEFENSE COUNSEL: | That if this is - - if this is what - - if this is known as a high crime area, then, there is other answers as to why this package may have been there as the police are ramming the door down of the defendant's apartment. In other words - - |
| THE COURT: | Do we now discount testimony of two FBI special agents who saw it come from the window[?] |
| DEFENSE COUNSEL: | We are certainly impeaching that, and I told the jury in the opening we have a witness that didn't see the agents and I told the jury I am contesting that evidence. |
| THE COURT: | All right. Let's move on. Wall Street is a high crime area too.  So let's move on. |

Outside the presence of the jury, defense counsel appropriately lodged an objection to the court's comment about the two FBI agents, saying, "[I]n my opinion, the court made a statement to the effect that there is no issue regarding whether or not the defendant crawled out the window."

3

*   *   *

THE COURT: All right. Stop right there. That is just wrong. The subject under discussion was the bag, the fact that two officers saw the baggy being thrown from the window. Had nothing to do with whether or not your client was attempting to climb from the window.

*   *   *

DEFENSE COUNSEL: If I am not wrong and a reasonable jury could construe that your Honor has in fact found it to be incredible that because these two agents allegedly saw my client, that would be in essence directing a verdict in this case. And, secondly, it would really subvert my credibility and relationship with the jury because pretty much my opening argument was that we are contesting that.

Defense counsel requested that the court instruct the jury that the court was not intending by its comments to "direct a verdict" against the defendant. The defense also unsuccessfully moved for a mistrial. Afterward, the following colloquy took place:

THE COURT: The issue had nothing to do with the client climbing out of the window. It was all about coffee grounds being found on that baggy, et cetera, and I was asking whether or not you were discounting the fact that two FBI agents had testified to the fact that they saw an arm come out of the window and the baggy being thrown. The subject of the

4

discussion was not whether or not your client was trying to climb out of the window. This was at the end of your very, very, very long examination about the presence of coffee grounds and whether or not the smell of coffee grounds can still be found on that evidence.

Now, with respect to your credibility. You also made a promise to the jury in your opening statement that apparently there is misconduct on the part of the government's agents or the confidential informant who is purportedly a meth addict and they have left him alone with meth and that there is meth missing. All right. That is going to be up to you to prove.

The court has said nothing with respect to giving you a script to what your opening statement should be so if you have made promises you can't keep, that is on you. Now, I wanted to give my reporter a break. All right. And I want you to come back on time.

DEFENSE COUNSEL: I mean I - -

THE COURT: The Court is done.

DEFENSE COUNSEL: I think it is very disparaging to me.

THE COURT: It is about to get disparaging to you.

DEFENSE COUNSEL: Right.

THE COURT: I tried to give you a break. I really have. I have had discussions with you in private. I have not publicly criticized some of your

5

performance, the written submissions, a lot of your arguments. I really tried to give you a break, . . . .

When the jury returned, testimony resumed, with no limiting instruction from the court.

We agree with Espinoza that the court's unwise statement was susceptible to being taken by the jury as the court's endorsement of the prosecution's witnesses' testimony as to when and how the bag got into the defendant's backyard. Such an endorsement undercut Espinoza's defense as to count 4 that the FBI witnesses were not to be believed.

The court compounded its error by losing patience with counsel and refusing to give a contemporaneous curative instruction as he requested.

We do not take an error of this sort lightly. A trial court has a duty to refrain during a jury trial from any conduct that might appear to favor one side or the other. As explained by the Supreme Court 80 years ago,

> The influence of a trial judge on the jury is necessarily and properly of great weight and his lightest word or intimidation is received with deference and may prove controlling. This court has accordingly emphasized the duty of the trial judge to use great care that an expression of opinion upon the evidence should be so given as not to mislead, and especially that it should not be one-sided . . . .

Quercia v. United States, 289 U.S. 466, 470 (1933) (internal quotation marks omitted). After carefully scouring the record, however, we conclude with no doubt that the evidence of Espinoza's guilt was simply overwhelming. In the main, the government's audio recordings first of phone calls with Espinoza arranging the methamphetamine deals and then of the deals themselves are compelling, both as corroboration of the informant and as primary evidence of the defendant's guilt of counts 1, 2, and 3 in the indictment. The third transaction was attended not by the informant alone, but also by an undercover agent posing as a potential methamphetamine customer. Particularly damning was a discussion between the agent and the defendant about conducting future methamphetamine deals.

Moreover, the defendant's use of transparently coded language in his recorded discussions plus the presence of drug dealing paraphernalia in his home (three digital scales and MSM, a cutting agent used with methamphetamine) sealed his fate. Also, the testimony of his defense witness Stephanie Alvarado was undercut by a surveillance video.

Espinoza's remaining pre-trial and trial claims involving (1) his motion to recuse the prosecutor, and (2) the prosecutor's alleged trial misconduct plainly have no merit.

II

As to Espinoza's sentence, we find no error in the district court's refusal to grant to him the benefits either of acceptance of responsibility or a minor role in the offenses. Also, the district court's reference to gang websites -- to which no objection was made -- does not appear to have affected Espinoza's sentence. The claim that the district court improperly took judicial notice of something is unsupported by the record. In any event, Espinoza had been a gang member, a status he did not deny. Finally, the court was correct in declining to conclude that Espinoza's criminal history was understated.

The 300-month sentence chosen was, on the facts and circumstances, substantively reasonable.

AFFIRMED.